**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,<br><br>Plaintiff,<br><br>v.<br><br>LENOVO (UNITED STATES) INC., et al.,<br><br>Defendants. | § § § § § § § § § § § | Civil Action No. 6:09-cv-399 (LED) |

**COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION'S MOTION TO AMEND AND SUPPLEMENT ITS INFRINGEMENT CONTENTIONS AND TO AMEND AND SUPPLEMENT ITS COMPLAINTS AND COUNTERCLAIMS**
[Patent L.R. 3-6(b); Fed. R. Civ. P. 15(a), 15(d)]

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND....................................................................................2

        A.      Initial and Amended Pleadings .....................................................................2

        B.      Infringement Contentions and Markman Schedule ......................................2

        C.      Reexamination and the Acceptance of New Claims......................................3

        D.      The New Claims ...........................................................................................4

III.    CSIRO SHOULD BE PERMITTED TO SUPPLEMENT AND
        AMEND ITS INFRINGEMENT CONTENTIONS....................................................5

        A.      The Court's Patent Rules Permit Liberal Amendment And
                Supplementation of Infringement Contentions.............................................5

        B.      Amendment Would Be More Efficient for the Court and
                the Parties.....................................................................................................7

        C.      Amendment of Infringement Contentions Is Appropriate At
                This Time ....................................................................................................10

IV.     THE COURT SHOULD PERMIT SUPPLEMENTATION AND
        AMENDMENT OF CSIRO'S COUNTERCLAIMS AND
        COMPLAINTS......................................................................................................13

V.      CONCLUSION.....................................................................................................15

i

# TABLE OF AUTHORITIES

*Page*

## Cases

Abbott Labs. v. Inverness Med. Tech.,
  2002 WL 1906533 (D.Mass. Aug. 19, 2002) ........................................................ 14

Alt v. Medtronic, Inc.,
  2006 WL 278868 (E.D. Tex. Feb.1, 2006) ............................................................. 6

Arbitron, Inc. v. International Demographics Inc.,
  2009 WL 166555 (E.D. Tex. Jan. 16, 2009)........................................................ 6, 8

Aten Intern. Co., Ltd. v. Emine Technology Co., Ltd.,
  2010 WL 1462110 (C.D. Cal. Apr. 12, 2010) ...................................................... 14

Beery v. Hitachi Home Elecs. (America), Inc.,
  157 F.R.D. 481 (C.D. Cal. 1994)........................................................................... 15

Connectel, LLC v. Cisco Systems, Inc.,
  391 F. Supp. 2d 526 (E.D. Tex. 2005).................................................................... 6

Cook Inc. v. Endologix, Inc.,
  2010 WL 2265203 (S.D. Ind. June 2, 2010).......................................................... 11

Coopervision, Inc. v. Ciba Vision Corp.,
  480 F. Supp. 2d 884 (E.D. Tex. 2007).................................................................... 6

Intel Corp. v. AmberWave Sys. Corp.,
  233 F.R.D. 416 (D. Del.2005) ............................................................................... 14

IP Innovation L.L.C. v. Red Hat, Inc.,
  2010 WL 1027468 (E.D. Tex. March 11, 2010)..................................................... 6

JAB Distributors, LLC v. London Luxury, LLC,
  2010 WL 3023163 (N.D. Ill. June 29, 2010).......................................................... 12

Lamoureux v. AnazaoHealth Corp.,
  669 F. Supp. 2d 227 (D.Conn. 2009)...................................................................... 14

Linex Techs., Inc. v. Belkin Int'l, Inc.,
  628 F. Supp. 2d 703 (E.D. Tex. 2008)............................................................... 6, 7, 8

MacLean-Fogg Co. v. Eaton Corp.,
  2008 WL 4601476 (E.D. Tex. Oct. 6, 2008) .......................................................... 6

Manning v. City of Auburn,
  953 F.2d 1355 (11th Cir. 1992) ............................................................................. 13

Mediostream, Inc. v. Microsoft Corp.,
  2010 WL 4118589 (E.D. Tex. Oct. 18, 2010) ........................................................ 7

Micron Tech., Inc. v. Rambus Inc.,
    409 F. Supp. 2d 552 (D. Del. 2006)............................................................................14

Mondis Technology Ltd. v. Top Victory Electronics (Taiwan) Co. Ltd.,
    2010 WL 3025243 (E.D. Tex. July 29, 2010) .............................................................5

New Balance Athletic Shoe, Inc. v. Puma USA, Inc.,
    118 F.R.D. 17 (D. Mass. 1987)..................................................................................15

Nidec Corp. v. LG Innotek Co., Ltd.,
    2009 WL 3673253 (E.D. Tex. Sept. 2, 2009) .............................................................6

O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.,
    467 F.3d 1355 (Fed. Cir. 2006) ..................................................................................7

Panduit Corp. v. Hellermanntyton Corp.,
    2005 WL 327059 (N.D. Ill. Feb. 9, 2005) .................................................................12

Quaratino v. Tiffany & Co.,
    71 F.3d 58 (2d Cir. 1995) ..........................................................................................13

Realtime Data, LLC v. Packeteer, Inc.,
    2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) ............................................................8

SanDisk Corp. v. STMicroelectronics Inc.,
    2009 WL 1404689 (N.D.Cal. May 19, 2009) ............................................................14

Smith, Kline & French Labs. v. A.H. Robins Co.,
    61 F.R.D. 24 (E.D. Pa. 1973)....................................................................................14

Staples v. Johns Manville, Inc.,
    2009 WL 2337105 (July 29, 2009, E.D. Mo.)...........................................................11

Vernay Labs., Inc. v. Indus. Elec. Rubber Co.,
    234 F. Supp. 161 (N.D. Ohio 1964)...........................................................................14

**Statutes**

35 U.S.C. §307..................................................................................................................10

**Rules**

Fed. R. Civ. Proc. 15........................................................................................................13

P.R. 3-6 .............................................................................................................................6

Patent Local Rule 3-1....................................................................................................5, 7

**Other Authorities**

6A Wright, Miller & Kane, Federal Practice & Procedure
§ 1504 (3d ed. 2010) ........................................................................................... 13

Manual of Patent Examining Procedure § 2235 (2010) .......................................... 11

Manual of Patent Examining Procedure § 2256 (2010) .......................................... 11

Manual of Patent Examining Procedure § 2287 (2010) ...................................... 1, 11

## I.    INTRODUCTION

Commonwealth Scientific and Industrial Research Organisation ("CSIRO") respectfully seeks leave to supplement and amend its infringement contentions and its complaints and counterclaims in order to incorporate new claims of the '069 Patent recently allowed by the United States Patent and Trademark Office ("PTO") upon reexamination of the Patent and to reduce the number of asserted claims.[1]   As the Court is aware, CSIRO has been the subject of a longstanding *ex parte* reexamination proceeding before the PTO filed in 2008 by Intel Corporation, which was at the time a party here.   Intel's tactical move was unsuccessful.   The PTO not only reaffirmed the patentability of the asserted claims, it also allowed new claims requested by CSIRO.   On November 4, 2010 the PTO issued a Notice of Intent to Issue an *Ex Parte* Reexamination Certificate ("NIRC"), which "informs the patent owner and any third party requester that the reexamination prosecution has been terminated."   Manual of Patent Examining Procedure ("MPEP") § 2287 (2010) at 2200-153.   Only the ministerial task of issuing the reexamination certificate remains.   CSIRO has kept the other parties in this litigation (collectively, "Defendants") fully apprised of the reexamination proceedings, and long ago invited them to take discovery on its new claims.   Upon issuance of the NIRC, CSIRO sought Defendants' agreement to stipulate to allow amendment of its infringement contentions.

Though Defendants have taken virtually no discovery, they collectively refused. Tellingly, Defendants' refusal is based not on a contention that the request to amend comes too *late* in the litigation (it does not), but rather that it is too *early*.   Defendants say that CSIRO cannot amend until the PTO has issued its final reexamination certificate.   That position improperly elevates form over practical substance.   There is no question that the new claims will ultimately become part of this litigation.   The only question is when.   With <u>Markman</u>

---

[1] CSIRO seeks such supplementations and/or amendments in each of the seven '069 Patent cases currently pending in this Court and therefore has filed identical motions in each of those cases.   The proposed amendments/supplementations are attached to the Declaration of Michael Ng ("Ng Decl.") as Exhibit 1 (proposed amended PICs) and Exhibit 2 (proposed supplement to complaint/counterclaims).

proceedings about to begin, the only sensible way to proceed is to permit amendment now so that the Court need only render a single claim construction ruling on all claims at issue, and so that the parties will not be required to engage in duplicative and wasteful discovery.  No party faces any material prejudice from this common-sense request.  The only potential prejudice (and waste) would flow from needlessly delaying inclusion of the new claims.  The Court should grant the motion so that the parties can move past these pleading formalities and proceed expeditiously to litigating *all* of the issues that are undisputedly within the scope of this case.

## II.   FACTUAL BACKGROUND

### A.   INITIAL AND AMENDED PLEADINGS

There are seven cases involving infringement of the '069 Patent currently pending before the Court.  CSIRO filed the Sony, Acer and Lenovo matters on September 9, 2009.  By agreement, those defendants' answers were delayed until February 26, 2010 to allow the parties to pursue settlement discussions.  Broadcom and Atheros filed their declaratory judgment action against CSIRO on November 10, 2009.  CSIRO moved to dismiss, which the Court denied on September 30, 2010.  CSIRO answered and counterclaimed on October 14, 2010, which Broadcom and Atheros answered on November 8, 2010.  CSIRO filed the AT&T, T-Mobile and Verizon cases on February 26, 2010, and those defendants answered shortly thereafter.  However, AT&T, T-Mobile and Verizon filed agreed amended counterclaims on November 12 and 22, 2010, which CSIRO answered on November 29 and December 9, 2010.

### B.   INFRINGEMENT CONTENTIONS AND MARKMAN SCHEDULE

The Court set a Markman hearing for March 31, 2011, and a trial date of November 14, 2011, in all of the seven cases.  After meeting and conferring, the parties ultimately agreed to intermediate deadlines reflected in the Docket Control Orders issued in each case.  Pursuant to that schedule, CSIRO served its original Patent Local Rule 3-1 Infringement Contentions on April 9, 2010 (Sony matter), April 30, 2010 (Acer and Lenovo matters), June 10, 2010 (Broadcom/Atheros matter), and July 12, 2010 (AT&T, T-Mobile and Verizon matters).  In each,

CSIRO asserted infringement of 26 claims of the '069 Patent: claims 10–16, 26–32, 42–48 and 68–72.

The parties' Patent Local Rule 4-3 Joint Claim Construction and Prehearing Statements are due on January 7, 2011 in the Broadcom/Atheros, Sony, Acer and Lenovo matters and January 17, 2011 in the AT&T, T-Mobile and Verizon matters.  The remaining pre-<u>Markman</u> deadlines are identical in all seven cases:

- February 8, 2011: Discovery deadline (Patent Local Rule 4-4)
- February 17, 2011: Opening <u>Markman</u> briefs due (Patent Local Rule 4-5(a))
- March 10, 2011: Response briefs due (Patent Local Rule 4-5(b))
- March 18, 2011: Reply briefs due (Patent Local Rule 4-5(c))
- March 24, 2011: Joint claim construction chart due (Patent Local Rule 4-5(d))
- March 31, 2011: <u>Markman</u> hearing

## C.    REEXAMINATION AND THE ACCEPTANCE OF NEW CLAIMS

On December 22, 2008, Intel Corp. (then a party to one of the '069 Patent cases pending before this Court) filed with the PTO a request for reexamination of the '069 Patent.[2]  In the course of responding to that reexamination, early on CSIRO provided the PTO with all of the prior art raised by Defendants both in this litigation and in the earlier cases.  On January 28, 2010, nearly a year ago, CSIRO submitted new claims 73-138.  On June 15, the PTO allowed many of these new claims, including claims 81, 82, 85, 87, 89 and 95 which CSIRO proposes to add to its infringement contentions.  On August 16, 2010, CSIRO submitted new claims 139-152 and argued that all of the remaining original and new claims were patentable.

---

[2]  On April 15, 2010 a second request for reexamination was filed by Novak Druce + Quigg LLP, a law firm representing an undisclosed client.  (Ng Decl. ¶ 12.)  The PTO rejected that request as not raising a substantial new question of patentability.  (Ng Decl. Ex. 3.)  One week after the issuance of the NIRC, on November 12, 2010, the same law firm filed another request for reexamination.  (Ng Decl. ¶ 12.)  That 249-page request responds in detail to the patent examiners' findings set out in the NIRC as well as the new claims allowed therein, revealing the requestor's longstanding preparedness to challenge CSIRO's new claims.  (<u>Id.</u>)

On November 4, 2010, the PTO agreed with CSIRO and issued a NIRC.  (Ng Decl. Ex. 4.)  All of the original claims asserted by CSIRO in the present cases and all of the new claims submitted by CSIRO (Claims 73–152) were deemed patentable.  The PTO is now completing the ministerial tasks necessary to publish a certificate of reexamination.  All of the new claims depend directly or indirectly from original claim 42 which has been the subject of this and the prior litigations and has gone through multiple claim constructions.

In July, just after the PTO issued its public Office Action allowing most of the new claims that are now being asserted, CSIRO sent a letter to each of the Defendants calling their attention to that Office Action and inviting them to take discovery relating to the new claims.  (Ng Decl. Ex. 5.)  No Defendant accepted that offer.  (Id. Ex. 7.)  In October, as the reexamination proceedings continued to progress, CSIRO again offered to provide discovery on the new claims.  (Id. Ex. 6.)  Once again, the Defendants declined that invitation.  (Id. Ex. 7.)  Finally, after the NIRC issued in November, CSIRO met and conferred with Defendants and sought a stipulation that would facilitate amendment of CSIRO's infringement contentions.  (Id. Exs. 8, 9, 10.)  Defendants refused.  (Id. ¶ 14.)

### D.    THE NEW CLAIMS

CSIRO's original infringement contentions asserted claims 10-16, 26-32, 42-48 and 68-72, a total of 26 claims.  In the meet and confer, CSIRO offered to amend its infringement contentions by dropping all but four of the originally asserted claims (10, 42, 44 and 48).  CSIRO also proposed adding 15 of the new claims, claims 74, 76, 80, 81, 83, 85, 87, 89, 92, 93, 95, 138, 139, 141, and 143, all of which are ultimately dependent on original claim 42.  The number of claims at issue would therefore have decreased from 26 to 19, with no method claims and only two independent claims (10 and 42).  These offers were rejected by all defendants.

All of the new claims, by law, had to be supported by the original patent specification and that support had to be cited in the amendment that added the new claims.  Because they are dependent, the new claims do not expand the scope of the Patent.  There is therefore nothing in the new claims that should surprise Defendants.  Every element set forth in the new claims has

- 4 -

been known to Defendants since January of this year when CSIRO first submitted claims 73-138 to the PTO.  In fact, a party which was following the publically available reexamination was able to draft and file a 249-page reexamination request attacking the new claims only a week after the NIRC issued.  (See Ng Decl. ¶ 12.)  CSIRO has reason to suspect that this new reexamination request was submitted on behalf or, or at least with the support of, one or more of the Defendants.  Similarly, the new claims do not change the category of the products at issue, namely, those practicing the IEEE 802.11 a/g/n standards.

The Court will see from the proposed amended patent infringement contentions (Ng. Decl. Ex. 1), that these new contentions are not complicated and encompass a few additional elements of the same 802.11 a/g/n products that have always been at issue in these cases.  In fact, except for their dependence, three of the new claims are the same as original claims, e.g., new claims 76 and 92 are the same as original claim 44, and new claim 80 is the same as original claim 48.  Five of the new claims are repeated with different dependency, e.g., claims 81 and 139; 83 and 93; 89 and 141; 85 and 95; and 87 and 143.

The reduction in the number of claims and the elimination of method claims will significantly reduce the complexity of this case.  Moreover, there has been plenty of time for Defendants to analyze their exposure under the new claims and the new elements thereof, given that the new claim elements have been available since January 28 and allowed since June 15.

## III.   CSIRO SHOULD BE PERMITTED TO SUPPLEMENT AND AMEND ITS INFRINGEMENT CONTENTIONS

### A.   THE COURT'S PATENT RULES PERMIT LIBERAL AMENDMENT AND SUPPLEMENTATION OF INFRINGEMENT CONTENTIONS

Patent Local Rule 3-1 requires a patent holder to identify asserted claims and infringement contentions at the outset of litigation.  The purpose of those disclosures is to provide the defendant with notice and limit the scope of theories the plaintiff may present at trial. Mondis Technology Ltd. v. Top Victory Electronics (Taiwan) Co. Ltd., No. 2:08-CV-478, 2010 WL 3025243, at *2 (E.D. Tex. July 29, 2010).  More specifically, infringement contentions

"narrow and focus the subsequent discovery" so that "the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for Markman, summary judgment, trial and beyond." Linex Techs., Inc. v. Belkin Int'l, Inc., 628 F. Supp. 2d 703, 707 (E.D. Tex. 2008) (quoting Connectel, LLC v. Cisco Systems, Inc., 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005)).

This Court's rules and precedents broadly allow for amendment of infringement contentions on a showing of good cause. See Patent Rule 3-6(b); Alt v. Medtronic, Inc., No. 2:04-cv-370, 2006 WL 278868, at *2 (E.D. Tex. Feb.1, 2006).  Courts in this district have found such good cause based on the plaintiff's lack of access to necessary information despite diligent efforts. See Mediostream, Inc. v. Microsoft Corp., No. 2:08-CV-369, 2010 WL 4118589, at *1-*4 (E.D. Tex. Oct. 18, 2010); Nidec Corp. v. LG Innotek Co., Ltd., No. 6:07-CV-108, 2009 WL 3673253, at *2 (E.D. Tex. Sept. 2, 2009); Arbitron, Inc. v. International Demographics Inc., No. 2:06-CV-434, 2009 WL 166555, at *1-2 (E.D. Tex. Jan. 16, 2009); MacLean-Fogg Co. v. Eaton Corp., No. 2:07-cv-472, 2008 WL 4601476, at *1-2 (E.D. Tex. Oct. 6, 2008); see also IP Innovation L.L.C. v. Red Hat, Inc., No. 2:07-cv-447, 2010 WL 1027468, at *1 (E.D. Tex. March 11, 2010).  In Coopervision, Inc. v. Ciba Vision Corp., 480 F. Supp. 2d 884, 886 and 889 (E.D. Tex. 2007), for example, this Court allowed plaintiff to assert five additional claims, finding not just that plaintiff acted with reasonable diligence but also that the new claims "could remove a point of dispute" between the parties. Id. at 899.  The Court also concluded that the defendant would not suffer unfair prejudice because the plaintiff had provided early notice of its intent to assert new claims and brought its motion to amend "months before the claim construction hearing" and discovery deadline, therefore obviating the need for a continuance. Id. at 890.

Here, CSIRO has been diligent in keeping the other parties apprised of the developments in the reexamination proceedings, which in any event were public and available to all Defendants.  CSIRO brought the PTO's final decision to this Court's attention at the earliest possible juncture.  The PTO's ultimate determination in the reexamination has always been a

- 6 -

well known factor in this litigation.  Because there has been no lack of diligence or notice, supplementation and/or amendment is plainly warranted.

**B.      AMENDMENT WOULD BE MORE EFFICIENT FOR THE COURT AND THE PARTIES**

Infringement contentions are intended to "narrow and focus the subsequent discovery" so that "the case takes a clear path" based on the relevant issues for trial.  Linex Techs., 628 F. Supp. 2d at 707.  That clarification benefits not just the litigants, who are spared the expense and burden of unnecessary and redundant discovery, but also the Court, which by granting amendment will avoid repetitious Markman and summary judgment motions and duplicative trials.  Here, amendment will also spare the Court and Defendants unnecessary litigation over claims that will no longer be at issue.  The manifest purpose of Patent Local Rule 3-1 is to clarify at the earliest possible opportunity the claims at issue in these cases, so as to minimize prejudice to all parties while maximizing the efficient resolution of the parties' claims.

"The Court has broad discretion to allow amendments to infringement contentions and considers four factors in ruling on motions for leave to do so: (1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice."  Mediostream, Inc., 2010 WL 4118589, at *1; see also O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 467 F.3d 1355, 1366 (Fed. Cir. 2006) (requiring diligence in amending infringement and invalidity contentions when new information comes to light in the course of discovery).  Analysis of these four factors demonstrates what common sense compels: that CSIRO's request to amend should be granted.

The first factor – CSIRO's explanation for its failure to meet the original deadline – favors amendment because it was impossible for CSIRO to assert the new claims any earlier.  At the time of the original patent contention deadlines the PTO had not yet allowed the new claims and therefore CSIRO could not claim that they were in contention.  However, CSIRO did provide Defendants with advanced notice of its request for new claims and provided each with a

copy of its filing.  (Ng Decl. Exhs. 5, 6.)  CSIRO also invited the Defendants to take discovery on the new claims.  (Id.)  Defendants declined to take any such discovery, claiming that CSIRO's request was not relevant.  (Id., Ex. 7.)  Similarly, when the PTO issued its NIRC, CSIRO again provided a copy to Defendants and again invited them to take discovery.  (Id., Exs. 8, 9, 10.)  CSIRO began immediate negotiations with Defendants seeking leave to amend its infringement contentions.  When Defendants refused, CSIRO filed this motion.

The second factor is the importance of what the Court is excluding, that is, the significance of the amendment.[3]  In addition to the substance of the new claims, the updated file history also bears considerable significance.  CSIRO disclosed to the PTO all of the prior art relied on by Defendants in these and in earlier cases, and the original and new claims were allowed in a administrative process where the burden of proof for a finding of invalidity is significantly lower than in a court.  The jury should be entitled to hear this when Defendants rely upon the same prior art at trial.  In addition, the new claims include significant features and combinations of features disclosed in the patent and not previously claimed in detail.  CSIRO ought to be allowed to present these new details to the jury to counter Defendants' invalidity attacks, both for reasons of judicial economy and fairness to CSIRO.

The third factor is the potential prejudice if the Court "allows the thing that would be excluded."  Here, there is minimal prejudice to Defendants by allowing amendment and introduction of the new claims.  The new claims are closely related to the subject matter of the previously asserted claims and Defendants have long been on notice of CSIRO's request to the PTO that it allow the new claims.  Defendants were invited to take discovery related to the new

---

[3] CSIRO anticipates that Defendants' opposition will challenge the merits of the new claims. Such merits issues are not properly considered in deciding this type of motion to amend.  "The court need not analyze the strength of plaintiff's infringement contentions as part of the good cause determination."  Arbitron, Inc. v. International Demographics Inc., No. 2:06-CV-434, 2009 WL 166555, at *2 (E.D. Tex. Jan. 16, 2009).  While infringement contentions must provide a defendant with adequate notice of the plaintiff's theories of infringement, they "are not meant to provide a forum for litigation of the substantive issues."  Realtime Data, LLC v. Packeteer, Inc., No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009) (quoting Linex, 628 F. Supp. 2d at 706).

claims and not only did they decline to take any such discovery, they have taken almost no discovery to date of CSIRO on any topic.  As of the filing of this motion, the eight Defendants have managed to serve a total of only four sets of interrogatories.  (Ng Decl. ¶ 13.)  While Broadcom and Atheros have served a notice of deposition to CSIRO, that deposition has not yet occurred or been scheduled.  (Id.)  This is not a situation in which a party has proceeded well into discovery in reliance on certain asserted claims only to be confounded by a change in direction that renders that prior work irrelevant.  Moreover, the new claims are not likely to alter the nature of the discovery going forward.  It is likely that the new claims have terms with construction issues that may be disputed, but most of the terms have already been the subject of prior claim construction disputes and many of the new terms have well-known, plain and ordinary meanings.  Thus, the new claims add very little to Defendants' discovery burden.

Even if the new claims entail some marginal additional discovery, such discovery would be inevitable.  If amendment and supplementation were not allowed CSIRO would merely file one or more separate actions based on the new claims (actions which in all likelihood would be related to or consolidated with the present actions).  Defendants would be subject to discovery on the new claims in that separate action.  In fact, denying amendment would only increase the discovery burdens on Defendants and CSIRO, because it would lead to duplicative discovery (and motion practice) in the separate but largely overlapping actions.

The fourth factor looks to the availability of a continuance to cure any prejudice.  Here, to the extent Defendants are prejudiced (they are not), such prejudice can be entirely ameliorated by a minor adjustment to the schedule of Markman proceedings.  At the time of the filing of this motion, the Markman hearing is more than three months away, with the first round of briefing more than two months away.  Moving those and other Markman-related dates back by one month would give the parties more than sufficient time to prepare for the Markman proceedings.  Movement of the Markman hearing may require some further adjustment of subsequent pretrial dates, like the exchange of expert reports and the completion of fact discovery.  Once the Court rules on this motion, the parties can meet and confer to set the appropriate interim dates in light

of the Court's position on amended infringement contentions and any adjustment to the

<u>Markman</u> schedule.  The parties would also confer regarding revision of their P.R. 4-1 and 4-2

disclosures to reflect their positions on the newly added claims.  Such adjustments would not

disrupt the November 14, 2011 trial date.[4]

These minor adjustments to the schedule in this case are preferable when compared to the

disruption that would be caused if CSIRO's request to amend its infringement contentions were

denied.  If that were to happen, CSIRO would be forced to file a separate action that would either

generate a whole new discovery, motion and trial schedule, or – if the cases were related or

consolidated – would necessitate substantial reworking of the schedule here.  There is no reason

why the Court or the parties should be subjected to such wasteful and unnecessary delays.

### C.   AMENDMENT OF INFRINGEMENT CONTENTIONS IS APPROPRIATE AT THIS TIME

Defendants do not contend that it is too *late* for CSIRO to amend its infringement

contentions, but rather that it is too *early* for it to do so.  Defendants argue that CSIRO's new

claims are unripe because the PTO has not yet completed the ministerial task of issuing the

reexamination certificate.  Defendants' argument is based on mischaracterization of PTO

procedure and a fundamental miscomprehension of the purpose of infringement contentions.

An *ex parte* reexamination concludes with the issuance by the PTO of a "reexamination

certificate" canceling any claims found unpatentable, confirming any patentable claims, and

incorporating any patentable amended or new claims.  35 U.S.C. §307.  However, all substantive

proceedings before the PTO terminate upon the issuance of a NIRC.  As the PTO's Manual of

Patent Examining procedure states, "Upon conclusion of the *ex parte* reexamination proceeding,

the examiner must prepare a 'Notice of Intent to Issue *Ex Parte* Reexamination Certificate'

---

[4]  CSIRO's proposed amended infringement contentions include updated listings of accused products.  As explained to Defendants in the meet and confer process, the new claims do not affect CSIRO's position on which products are accused.  From the outset, CSIRO has been clear that it alleges infringement by any product that practices the 802.11 a/g/n standard.  By definition, no product that infringes the new claims would fall outside the scope of the original claim 42.  The updated lists reflect additional information provided by Defendants in discovery and/or new products sold after the date of CSIRO's original infringement contentions.

(NIRC) ... A NIRC informs the patent owner and any third party requester that the reexamination prosecution has been terminated.  The rules do not provide for an amendment to be filed in a reexamination proceeding after prosecution has been terminated."  MPEP § 2287 at 2200-153. As one court recognized, "by issuing a Notice of Intent to Issue *Ex Parte* Reexamination Certificate, the USPTO in effect declares that its analysis is complete."  Staples v. Johns Manville, Inc., No. 4:08CV306, 2009 WL 2337105 at *1 n.3 (E.D. Mo. July 29, 2009).

Once the NIRC is issued, internal PTO procedures mandate the speedy completion of the ministerial tasks necessary for the issuance of the reexamination certificate.  "Once the NIRC has been mailed, the reexamination proceeding must proceed to publication of the Reexamination Certificate as soon as possible."  MPEP § 2256 at 2200-87.  After issuance of the NIRC the reexamination file leaves the hands of the patent examiner and is forwarded to the PTO's Office of Patent Legal Administration and Office of Data Management for the publication of the reexamination certificate.  MPEP § 2287 at 2200-155; § 2289 at 2200-161.  The PTO deems a certificate "overdue" if it has not been issued within three months of the mailing of the NIRC. MPEP § 2235(E)(15) at 2200-50.

This Court has the discretion to allow pretrial proceedings to move forward on the basis of the NIRC even if the reexamination certificate remains pending.  For example, in Cook Inc. v. Endologix, Inc., No. 1:09-cv-1248, 2010 WL 2265203, at * 1 (S.D. Ind. June 2, 2010), the court lifted its stay of proceedings during the pendency of reexamination of the patent at issue, finding that "the NIRC terminates the prosecution stage of the reexamination."  The court colorfully explained: "As Bob Dylan sang in 'Subterranean Homesick Blues,' 'You don't need a weatherman to know which way the wind blows.'  And you don't need a Reexamination Certificate to know that this case is now poised to move forward."  Id.  Similarly, the court in Staples also lifted its stay pending reexamination upon the issuance of a NIRC, finding that "the USPTO effectively terminated the first reexamination by issuing its Notice of Intent to Issue an Ex Parte Reexamination Certificate."  2009 WL 2337105, at * 1.  Notably, the stay was lifted despite the filing of a new request for reexamination, apparently on the basis of new prior art.  Id.

Defendants point to a case in which a court has declined to lift a stay despite the issuance of a NIRC, Panduit Corp. v. Hellermanntyton Corp., No. 03-C-8100, 2005 WL 327059 (N.D. Ill. Feb. 9, 2005).  However, in the same decision declining to lift the stay, the court granted summary judgment on what appears to have been the core claim in the case, plaintiff's claim that defendant breached an agreement settling an earlier infringement action between the parties, and *sua sponte* granted partial summary judgment on the stayed infringement claim.  The Court's exercise of its discretion not to lift the stay thus appears to be premised in large part on the resolution of the crux of the dispute, and the postural idiosyncrasies of that case not present here. Defendants also rely on In re Bass, 314 F.3d 575 (Fed. Cir. 2002), an appeal from the Board of Patent Appeals in which the Federal Circuit held that the issuance of a NIRC does not deprive the PTO of jurisdiction over a reexamination.  While the PTO may technically retain jurisdiction over the reexam prior to the issuance of the certificate, that is no reason for the Court to proceed as if the certificate is not forthcoming.  As another court stated, "Simply because the PTO retains jurisdiction until it issues the reexamination certificate, however, does not mean that the PTO is likely to change course.  Indeed, the NIRC provides that prosecution is 'closed' and that a certificate of reexamination 'will be issued.'"  JAB Distributors, LLC v. London Luxury, LLC, No. 09-C-5831, 2010 WL 3023163 at *1 (N.D. Ill. June 29, 2010).  Here, there is no reason the Court's and the parties' time and resources should be wasted based upon the fiction that the PTO will not do exactly what it says it will do and issue a certificate in due course.

In meet and confer sessions, Defendants also have mentioned the new 249-page reexamination request filed a week after the PTO issued the NIRC as a reason to dispute the amendment of the infringement contentions now.  The new reexamination request reargues the main publication contention considered and rejected by the PTO in the reexamination just ended; and discusses alleged prior art mostly already before the office.  (Ng Decl. ¶12.)  Indeed, the new request argues that the new claims are not patentable at the same time that Defendants here argue that the new claims are not ripe to be included in this case.  Even if the PTO initiates a new reexamination based on this new request, it would then proceed as all reexaminations do and

would have no effect on this proceeding until it, like the present reexamination, is complete (through the issuance of a NIRC or otherwise).  Any other course of action by the PTO is just wishful thinking by Defendants.

## IV.    THE COURT SHOULD PERMIT SUPPLEMENTATION AND AMENDMENT OF CSIRO'S COUNTERCLAIMS AND COMPLAINTS

Though it does not believe that doing so is strictly necessary, out of an abundance of caution CSIRO also requests leave to supplement its complaints and counterclaims to further clarify that the new claims are part of this case, to avoid any doubt as to the scope of the claims in dispute, and to prevent any further delays in adjudication of the new claims.[5]  Specifically, CSIRO requests that the Court issue an order granting CSIRO leave to supplement its complaints and counterclaims upon the PTO's formal issuance of the reexamination certificate.  As with the supplementation of CSIRO's patent contentions, supplementation of CSIRO's counterclaims is a formality that should be dispensed with so that the parties can move forward towards litigating the extant and disputed issues in this case.  Such supplementation is routinely granted in patent cases because it conserves judicial resources by ensuring that all existing disputes are resolved in one action instead of separate redundant cases.

Federal Rule of Civil Procedure 15(d) permits a party to use a supplemental pleading to bring an action up to date by setting forth events that have occurred since the original pleading was filed.  See, e.g., Manning v. City of Auburn, 953 F.2d 1355, 1359-60 (11th Cir. 1992).  The Court may grant a motion for leave to file a supplemental pleading upon such terms as are just.  See F.R.C.P. 15(d).  Supplemental pleadings are favored because they enable the court to award complete relief in the same action, avoiding the waste and delays associated with separate suits.  See 6A Wright, Miller & Kane, Federal Practice & Procedure § 1504 (3d ed. 2010).  Accordingly, absent a showing of unfair prejudice, a Rule 15(d) motion should be freely granted.  See id.; Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995).

---

[5] CSIRO's complaints and counterclaims already broadly allege that Defendants are "liable for infringement of the '069 Patent."  Such allegations therefore encompass the new claims of the '069 Patent issued by the PTO pursuant to the reexamination proceedings.

- 13 -

Particularly in patent cases, motions to supplement the pleadings are treated liberally. See, e.g., Smith, Kline & French Labs. v. A.H. Robins Co., 61 F.R.D. 24, 31 (E.D. Pa. 1973) ("In the interest of permitting the efficient, economical and prompt resolution of this litigation, it is important that the patent disputes among these parties be settled in one proceeding."); Vernay Labs., Inc. v. Indus. Elec. Rubber Co., 234 F. Supp. 161, 166 (N.D. Ohio 1964) ("Motions for supplemental complaints in patent cases have been treated liberally[.]"). Thus, for example, courts have widely granted motions to supplement to add new patent claims based upon newly issued patents. See, e.g., Aten Intern. Co., Ltd. v. Emine Technology Co., Ltd., No. SACV-09-843, 2010 WL 1462110, *3 (C.D. Cal. Apr. 12, 2010) (noting that "[a]mended and supplemental patent claims are frequently added to existing lawsuits" and citing cases); SanDisk Corp. v. STMicroelectronics Inc., No. C-04-4379, 2009 WL 1404689, at *3 (N.D.Cal. May 19, 2009); Lamoureux v. AnazaoHealth Corp., 669 F. Supp. 2d 227, 237 n.12 (D.Conn. 2009) ("[T]here is substantial authority for allowing supplemental pleadings where new infringement claims relate to the same technology or to new patents containing similar claims as those in the original patent."); Micron Tech., Inc. v. Rambus Inc., 409 F. Supp. 2d 552, 558-60 (D. Del. 2006); Intel Corp. v. AmberWave Sys. Corp., 233 F.R.D. 416, 417-18 (D. Del.2005); Abbott Labs. v. Inverness Med. Tech., No. Civ.-98-10674, 2002 WL 1906533, at *3 (D.Mass. Aug. 19, 2002). As explained by the court in AmberWave, amendment  and supplementation is favored in such circumstances because "presentations on infringement for both [the original and supplemental claims] will require a judge, on the summary judgment motions that are sure to be filed, and a jury, at any trial of the case, to become familiar with the same field of art, the same fundamental science and technology associated with [the patent], the same allegedly infringing devices, and, in any damages analysis, the same pricing, sales, and related market data."  233 F.R.D. at 418.

Here, CSIRO's request is even more modest than those that were freely granted in the cases cited above.  CSIRO does not request that entirely new claims based upon new patents be included in this case.  Instead, CSIRO requests only that the new claims which are dependent on the claims that are already part of this case, and which are part of the same patent, be included

- 14 -

within the scope of the already broad allegations of CSIRO's existing pleadings.  Other courts

have not hesitated in granting requests of this nature.  For example, in <u>Beery v. Hitachi Home</u>

<u>Elecs. (America), Inc.</u>, 157 F.R.D. 481, 484 (C.D. Cal. 1994), the court granted a motion to

supplement and amend the complaint to introduce new patent claims based upon a reexamination

that occurred after the complaint was originally filed.  Similarly, in <u>New Balance Athletic Shoe,</u>

<u>Inc. v. Puma USA, Inc.</u>, 118 F.R.D. 17, 20 (D. Mass. 1987), the court granted a motion to amend

a pleading to include a patent that had been reissued pursuant to a reexamination by the PTO.[6]

     The other parties to this case cannot credibly claim that they would be prejudiced by the

requested supplementation.  The Defendants knew that the PTO was reexamining the '069 Patent

throughout the pendency of those proceedings.  CSIRO has not delayed this motion to

supplement; indeed, if anything the other parties have accused CSIRO of acting too quickly.  As

with the amended counterclaims filed by AT&T, T-Mobile and Verizon (with CSIRO's consent),

the filing of amended pleadings and answers thereto will not affect any deadline or otherwise

disrupt the schedule.  And, consideration of the new claims in the context of this litigation would

undoubtedly conserve judicial resources by avoiding a circumstance in which CSIRO is required

to file a separate, redundant action.  There is no need to waste the parties' and the Court's time in

such a fruitless exercise.  The motion for leave to supplement and amend should be granted.

## V.    CONCLUSION

     There is no question that the proper focus of this litigation is on the claims of the '069

Patent as they stand after the reexamination.  Because it is inevitable that those claims will

ultimately be presented in this case, the Court should enter the appropriate order permitting

formal amendment and supplementation of the patent contentions and pleadings.  Doing so will

prevent needless delay of discovery, claim construction, summary judgment and trial.

---

[6] Courts have struggled with the question of whether a motion like this one is properly styled as
a motion to amend or a motion to supplement.  <u>See, e.g.</u>, <u>New Balance,</u> 118 F.R.D. at 19-20.
To the extent this Court deems the instant motion to be more appropriately styled as a motion
to amend, CSIRO hereby moves in the alternative to amend its counterclaims.

Dated:  December 23, 2010                 Respectfully submitted,

                                          **KERR & WAGSTAFFE LLP**


                                          ___/s/ James M. Wagstaffe_____
                                          James M. Wagstaffe (CA Bar No. 95535)
                                          Michael K. Ng (CA Bar No. 237915)
                                          Maria V. Radwick (CA Bar No. 253780)
                                          **KERR & WAGSTAFFE LLP**
                                          100 Spear Street, Suite 1800
                                          San Francisco, CA 94105
                                          Telephone: 415-371-8500
                                          Facsimile: 415-371-0500
                                          E-mail: wagstaffe@kerrwagstaffe.com
                                          E-mail: mng@kerrwagstaffe.com
                                          E-mail: radwick@kerrwagstaffe.com

                                          S. Calvin Capshaw (State Bar No. 03783900)
                                          Elizabeth L. DeRieux (State Bar No. 05770585)
                                          D. Jeffrey Rambin (State Bar No. 00791478)
                                          John E. Lord (CA Bar No. 216111)
                                          **Capshaw DeRieux, LLP**
                                          1127 Judson Road, Suite 220
                                          Longview, TX 75601
                                          Telephone: 903-236-9800
                                          Facsimile: 903-236-8787
                                          E-mail: ccapshaw@capshawlaw.com
                                          E-mail: ederieux@capshawlaw.com
                                          E-mail: jrambin@capshawlaw.com
                                          E-mail: jlord@capshawlaw.com

                                          Frederick G. Michaud (DC Bar No. 177675)
                                          **Capshaw DeRieux, LLP - Washington**
                                          1801 Florida Avenue, NW
                                          Washington, DC 20009
                                          Telephone: 202-588-1960
                                          Facsimile: 202-588-1961
                                          E-mail: fmichaud@capshawlaw.com

                                          Gary H. Ritchey (CA Bar No. 136209)
                                          **Hopkins & Carley**
                                          P.O. Box 1469
                                          70 South First Street
                                          San Jose, CA 95113

- 16 -

Telephone: 408-286-9800
Facsimile: 408-998-4790
E-mail: gritchey@hopkinscarley.com

**Attorneys for**
**COMMONWEALTH SCIENTIFIC AND**
**INDUSTRIAL RESEARCH ORGANISATION**

## **CERTIFICATE OF CONFERENCE**

In compliance with Local Rule CV-7(h), on November 11, 2010, Elizabeth DeRieux, counsel for CSIRO, sent a copy of the PTO's Notice of Intent to Issue an Ex Parte Reexamination Certificate, dated November 4, 2010, to counsel of record for the Defendants in all seven cases involving infringement of the '069 Patent currently pending before the Court.  In her email, Ms. DeRieux informed Defendants that CSIRO intended to file a motion to amend its infringement contentions to add new claims and inquired as to whether Defendants opposed the motion.  On November 23, Ms. DeRieux sent a follow-up email again to all Defendants inquiring as to their position regarding CSIRO's motion and responding to issues raised by various Defendants in meet and confer telephone conferences.  On December 9, Ms. DeRieux, Frederick Michaud, James Wagstaffe, and Michael Ng, as lead and local counsel for CSIRO, participated in a meet and confer telephone conference with lead and local counsel for all Defendants (excluding lead counsel for Verizon who could not participate in the call but agreed to contact counsel for CSIRO directly if he had anything to add).  During the meet and confer telephone conference, Defendants through counsel indicated they intended to oppose CSIRO's motion to amend its infringement contentions based on prematurity.

Dated: December 23, 2010

/s/ James M. Wagstaffe
James M. Wagstaffe

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this December 23, 2010 with a copy of this document via the Court's CM/ECF System per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.


/s/ James M. Wagstaffe_____
James M. Wagstaffe

- - 2 - -